Filed 7/11/14 (unmodified opn. attached)      Reposted 7/18/14 to correct footnote numbering

<u>**CERTIFIED FOR PUBLICATION**</u>

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**THIRD APPELLATE DISTRICT**

**(Sacramento)**

**----**

| | |
|---|---|
| COUNTY OF COLUSA et al., | C073624 |
| Plaintiffs and Appellants, | (Super. Ct. No. 34-2012-80001053-CU-WM-GDS) |
| v. | |
| TOBY DOUGLAS, as Director, etc., et al., | ORDER MODIFYING OPINION |
| Defendants and Respondents. | [NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion certified for publication and filed herein on July 9, 2014, be modified to clarify the Disposition as follows:

On page 17, delete the paragraph (which includes fn. 5) following the DISPOSITION in its entirety, and replace it with:

1

## DISPOSITION

The judgment is reversed. The trial court is directed to grant the Counties'
petition for writ of mandate and complaint for declaratory and injunctive relief as
follows: The DHCS 2009 Memorandum and the DMH 2010 Letter contravene section
14053.1 (which requires the State to pay for ancillary outpatient services for Medi-Cal
eligible IMD patients within the federal IMD exclusion), and are therefore invalid; the
State is enjoined from applying them. The Counties are awarded their costs on appeal.[5]

---

[5] In light of our resolution, we do not reach the issue of whether the DHCS 2009
Memorandum and the DMH 2010 Letter are also invalid as underground regulations
under the Administrative Procedures Act.

We grant the Counties' request for judicial notice, showing the State's estimated cost
for IMD ancillary services for fiscal years 2013-2014 and 2014-2015. We deny the
State's motion to augment or, in the alternative, request for judicial notice to consider an
unpublished decision of the federal Health and Human Services Agency.

(Cal. Rules of Court, rule 8.278(a)(1), (2).)  (***CERTIFIED FOR PUBLICATION***)

There is no change in judgment.

BY THE COURT:


      BUTZ      , Acting P. J.


      DUARTE     , J.


      HOCH     , J.

Filed 7/9/14 (unmodified version)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

**(Sacramento)**

----

| | |
|---|---|
| COUNTY OF COLUSA et al., | C073624 |
| Plaintiffs and Appellants, | (Super. Ct. No. 34-2012-80001053-CU-WM-GDS) |
| v. | |
| TOBY DOUGLAS, as Director, etc., et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Sacramento County, Timothy M. Frawley, Judge. Reversed.

Remcho, Johansen & Purcell, Margaret R. Prinzing, Karen Getman and Harry A. Berezin for Plaintiffs and Appellants (all counties).

Marcos A. Kropf, County Counsel (Colusa); Wendy B. Chaitin, County Counsel (Humboldt), and Karen Roebuck, Deputy County Counsel; Colleen J. Carlson, County Counsel (Kings), and Diane Walker, Deputy County Counsel; John F. Krattli, County Counsel (Los Angeles), and Stephanie Jo Farrell, Principal Deputy County Counsel; Brina A. Latkin, County Counsel (Mendocino); Charles J. McKee, County Counsel (Monterey), Stacy L. Saetta and Anne K. Brereton, Deputy County Counsel; Minh C. Tran, County Counsel (Napa), and Janice D. Killion, Deputy County Counsel; Nicholas S. Chrisos, County Counsel (Orange), and James C. Harman, Deputy County Counsel; Gerald O. Carden, County Counsel (Placer), and Valerie D. Flood, Deputy County Counsel; Pamela J. Walls, County Counsel (Riverside); John F. Whisenhunt, County

1

Counsel (Sacramento), and Rick J. Heyer, Deputy County Counsel; Rita L. Neal, County Counsel (San Luis Obispo), and David M. Stotland, Deputy County Counsel; John C. Beiers, County Counsel (San Mateo), John D. Nibbelin, Chief Deputy County Counsel, and Peter K. Finck, Deputy County Counsel; Orry P. Korb, County Counsel (Santa Clara), Danny Y. Chou, Assistant County Counsel, and Greta S. Hansen, Deputy County Counsel; Bruce D. Goldstein, County Counsel (Sonoma), and Phyllis C. Gallagher, Deputy County Counsel; John P. Doering, County Counsel (Stanislaus), William Dean Wright and Alice E. Mimms, Deputy County Counsel; Kathleen Bales-Lange, County Counsel (Tulare), and Julia C. Langley, Deputy County Counsel; Sarah Carrillo, County Counsel (Tuolumne), and Christopher J. Schmidt, Deputy County Counsel, for Plaintiffs and Appellants (individual counties).

Cota Cole and Derek P. Cole for Plaintiff and Appellant Trinity County.

Hooper, Lundy & Bookman and Mark E. Reagan for California Association of Health Facilities as Amicus Curiae on behalf of Plaintiffs and Appellants.

Kamala D. Harris, Attorney General, Julie Weng-Gutierrez, Assistant Attorney General, Ismael A. Castro and Lisa A. Tillman, Deputy Attorneys General, for Defendants and Respondents.

We conclude that Welfare and Institutions Code section 14053.1—under which the State of California, rather than its counties, pays for ancillary outpatient services for Medi-Cal eligible patients ages 21 to 64 in an "institution for mental diseases" (IMD)—remains a valid law.[1]

In reaching this conclusion, we find that Welfare and Institutions Code section 14053.1's presence in the California statutes is not the result of a legislative amendment to a repealed act, which is a legislative action proscribed under Government Code section 9609; and further find that Welfare and Institutions Code section 14053.3 (which requires the state to recover from counties payments for certain ancillary services, when Medi-Cal coverage is unavailable) did not shift funding from the state to the counties for ancillary outpatient services to Medi-Cal eligible IMD patients ages 21 to 64, and did not impliedly repeal section 14053.1. Accordingly, we shall reverse the judgment.

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

2

## FACTUAL AND PROCEDURAL BACKGROUND

We draw much of our background from the able summary of facts and procedure the trial court provided in its ruling.

### *Medicaid, Medi-Cal, and Payment of Services for IMD Patients*

Medicaid is a cooperative federal-state program under which the federal government and participating state governments share the costs of medical treatment for generally low-income individuals.  (42 U.S.C. § 1396 et seq.)  California's Medicaid program is known as Medi-Cal.  (§ 14000 et seq.)

IMD's are hospitals, nursing facilities, and other institutions that primarily treat and care for patients with mental diseases.  (42 U.S.C. § 1396d(i).)  Nearly all individuals placed within IMD's are gravely disabled by mental disease and unable to provide for themselves; most IMD patients qualify for Medi-Cal.

Under federal Medicaid law, the federal government does not pay for services to IMD patients between the ages of 21 and 65.  (42 U.S.C. § 1396d(a)(xvii)(29)(B); *Connecticut Dept. of Income Maintenance v. Heckler* (1985) 471 U.S. 524, 525 [85 L.Ed.2d 577, 579].)  The federal government deems long-term care in mental institutions a state responsibility; this policy is known as the "IMD exclusion" (hereafter, federal IMD exclusion).  (*Heckler*, *supra*, 471 U.S. at p. 533, fn. 24 [85 L.Ed.2d at p. 584, fn. 24].)  As to that exclusion, federal Medicaid law does not prohibit states from paying for IMD services as a "state-only" Medicaid benefit.

### *Statutory Scheme Involving State Medi-Cal Funding of IMD Ancillary Services*

In 1999, California (the State) added a state-only Medi-Cal benefit by enacting section 14053.1.  That section provides that the State will pay for "ancillary outpatient services" for IMD patients ages 21 to 64 (i.e., the patients within the federal IMD exclusion).  "Ancillary outpatient services" generally constitute physician services,

prescription drugs, x-rays, and laboratory, dental, vision, psychiatric and psychological services, performed outside the IMD.

After section 14053.1's enactment in 1999, the State and the counties divided financial responsibility for IMD patients as follows: (1) For a patient within the federal IMD exclusion who is eligible for Medi-Cal, counties pay for the patient's "core" (i.e., basic, institutional) IMD services, and the State pays for "ancillary outpatient" services; and (2) for a patient within the federal IMD exclusion who is not eligible for Medi-Cal, counties generally pay for both the "core" services and the "ancillary outpatient" services (generally, persons who are not Medi-Cal eligible are undocumented persons). (§§ 5600 et seq., 5900-5912, 14053.1.)

Shortly after section 14053.1 was enacted in 1999, the Legislature amended it to include a one-year sunset provision. (Stats. 1999, ch. 146, § 39, p. 1917; Stats. 1999, ch. 148, § 2, p. 2028.)

The specific focus of this appeal involves two Assembly Bills: Assembly Bill No. 2877 (1999-2000 Reg. Sess.) (hereafter, Assembly Bill 2877) and Assembly Bill No. 430 (2000-2001 Reg. Sess.) (hereafter, Assembly Bill 430) (collectively, Assembly Bills 2877 and 430), that concern subsequent sunsetting legislation regarding section 14053.1. Assembly Bill 2877, enacted in 2000, sought to extend the original sunset provision an additional year. (Stats. 2000, ch. 93, § 65, pp. 1463-1464.) And Assembly Bill 430, enacted in 2001, sought to eliminate the sunset provision altogether, thereby making section 14053.1 effective indefinitely. (Stats. 2001, ch. 171, § 38, p. 1859.) Assembly Bills 2877 and 430 each were enacted as urgency legislation budget trailer bills during fiscal year-end budget disputes that were typical at the time of their enactments. We will set forth the specific language of these two bills when we discuss them in detail later.

4

All parties agree that, at least until section 14053.3 was enacted in 2008, the State paid for ancillary outpatient services, in line with section 14053.1, for Medi-Cal eligible IMD patients within the federal IMD exclusion.  Section 14053.3 requires the State Department of Mental Health (DMH) (now the State Department of Health Care Services or DHCS)[2] to recover IMD ancillary payments that were made to counties by the State (when Medi-Cal coverage is unavailable) or by the federal government (given the federal IMD exclusion).

Following section 14053.3's enactment, the State—through a DHCS memorandum in 2009 (hereafter, DHCS 2009 Memorandum), and a DMH letter in 2010 (hereafter, DMH 2010 Letter)—(1) informed IMD's that Medi-Cal (i.e., state funding) does not cover the costs of ancillary outpatient services for Medi-Cal eligible IMD patients within the federal IMD exclusion, and (2) directed health care providers of those services to bill counties, rather than the State, for such services.  We will set forth section 14053.3's language when we discuss it later.

*Procedural Background*

Twenty California counties (the Counties) have been plaintiffs in the lawsuit at issue here—a petition for writ of mandate and complaint for declaratory and injunctive relief against defendants the State and its pertinent officials (DHCS and DMH).[3]

In their petition, the Counties allege that the DHCS 2009 Memorandum and the DMH 2010 Letter are invalid because (1) they are inconsistent with Welfare and Institutions Code section 14053.1, which requires the State to pay for ancillary outpatient services for Medi-Cal eligible IMD patients within the federal IMD exclusion, and (2)

---

[2]  In 2012, the Legislature transferred Medi-Cal related mental health functions from the DMH to the DHCS.  (§ 14700.)

[3]  In October 2012, the Counties dismissed DMH and its Director from this action; see footnote 2, *ante*.

they constitute underground regulations adopted in violation of the state Administrative Procedures Act (Gov. Code, § 11340.5, subd. (a)).

In their complaint, the Counties similarly seek a declaration that the subject memorandum and letter are invalid, and a writ/injunction prohibiting the State from applying them against the Counties.

The State responds that section 14053.1 was repealed by virtue of its original sunset provision and section 14053.3 shifted funding from the State to counties for ancillary services for Medi-Cal eligible IMD patients within the federal IMD exclusion.

The trial court denied the Counties' petition for writ of mandate and complaint for injunctive relief, and issued a declaratory judgment in favor of the State. The court concluded that the subsequent sunsetting amendments to section 14053.1 (Assem. Bills 2877 & 430) were void because they were enacted after the statute had already sunset by its own terms in 2000. Thus, in the absence of section 14053.1, the State did not promulgate an underground regulation by issuing the DHCS 2009 Memorandum and the DMH 2010 Letter and ancillary outpatient services for Medi-Cal eligible IMD patients within the federal IMD exclusion are not eligible for funding from the State.

## DISCUSSION

To resolve the issues on appeal, we must interpret the statutes at play—sections 14053.1 and 14053.3.

Interpreting statutes against a backdrop of undisputed facts, as here, presents questions of law that we determine independently. "Our objective in interpreting a statute is to determine legislative intent so as to effectuate the law's purpose. The first thing we do is read the statute, and give the words their ordinary meanings unless special definitions are provided. If the meaning of the words is clear, then the language controls; if not, we may use various interpretive aids," such as the statutory context and

6

framework, and legislative history. (*Schnyder v. State Bd. of Equalization* (2002) 101 Cal.App.4th 538, 545, fns. omitted; *Department of Fish & Game v. Anderson-Cottonwood Irrigation Dist.* (1992) 8 Cal.App.4th 1554, 1562.)

## I. The Interpretation of Section 14053.1

The Legislature first enacted section 14053.1 in 1999 to read exactly as it does today: "Notwithstanding Section 14053 [(a state statute that recognizes the federal IMD exclusion)], ancillary outpatient services, pursuant to Section 14132 [(delineating such services)], for any eligible individual who is 21 years of age or over, and has not attained 65 years of age and who is a patient in an institution for mental diseases [(IMD)] shall be covered regardless of the availability of federal financial participation [(i.e., regardless of the federal IMD exclusion)]." (Stats. 1999, ch. 146, § 39, p. 1917, eff. July 22, 1999.)

We will refer to this legislative expression, consistently set forth since 1999, as the section 14053.1 substantive provision.

Shortly after section 14053.1 was enacted in 1999, the Legislature amended it to include a one-year sunset provision (this is § 14053.1's original sunset provision). Pursuant to this amendment, the section 14053.1 substantive provision was now set forth in subdivision (a); and the sunset provision in subdivision (b), which stated, "This section [(i.e., § 14053.1's substantive provision)] shall remain in effect only until July 1, 2000, and as of that date is repealed, unless a later enacted statute that is chaptered on or before July 1, 2000, deletes or extends that date." (Stats. 1999, ch. 148, § 2, p. 2028, eff. July 22, 1999.)

That brings us to the two Assembly bills concerning the issue of section 14053.1's later sunsetting—Assembly Bill 2877 in 2000 and Assembly Bill 430 in 2001. These two bills comprise the focus of this appeal in terms of section 14053.1's interpretation.

7

Regarding section 14053.1, Assembly Bill 2877 set forth the section 14053.1 substantive provision (in subd. (a)), and a new sunset provision in subdivision (b), which stated, "This section [(i.e., § 14053.1's substantive provision)] shall remain in effect only until July 1, 2001, and as of that date is repealed, unless a later enacted statute that is chaptered on or before July 1, 2001, deletes or extends that date." (Stats. 2000, ch. 93 § 65, pp. 1463-1464, eff. July 7, 2000.)

Although Assembly Bill 2877 was "a later enacted statute" in the wording of section 14053.1's original sunset provision (quoted above), Assembly Bill 2877 was not "chaptered on or before July 1, 2000," as section 14053.1's original sunset provision required for the section's seamless sunset extension. The Legislature adopted Assembly Bill 2877, prior to July 1, 2000, as a health budget "trailer bill" (urgency legislation) to implement the Fiscal Year 2000-2001 Budget Act (that fiscal year began on July 1, 2000); but the Governor did not approve Assembly Bill 2877 until July 6, 2000, and the Secretary of State did not chapter it until July 7, 2000. (Stats. 2000, ch. 93, § 65, pp. 1405, 1463-1464.)

Regarding section 14053.1, Assembly Bill 430 set forth the section 14053.1 substantive provision, and deleted the sunset provision altogether (and consequently also deleted the subdivision designations "(a)" and "(b)"), so that section 14053.1 again read as it did when originally enacted in 1999 (i.e., just the § 14053.1 substantive provision quoted above). (Stats. 2001, ch. 171, § 38, p. 1859, eff. Aug. 10, 2001.)

This is the way section 14053.1 still reads. Again, though, the "later enacted statute" of Assembly Bill 430 (as required by the wording of Assem. Bill 2877's sunset provision) was not "chaptered on or before July 1, 2001." The Legislature adopted Assembly Bill 430 on July 31, 2001, as a health budget "trailer bill" (urgency legislation) to implement the Fiscal Year 2001-2002 Budget Act; the Governor approved it on

August 9, 2001; and the Secretary of State chaptered it on August 10, 2001. (Stats. 2001, ch. 171, § 38, pp. 1807, 1859.)

The State contends that section 14053.1 was repealed, under its original sunset provision, on July 1, 2000, and that Assembly Bills 2877 and 430, as purported subsequent amendments to section 14053.1, were void under Government Code section 9609, which states, "[a] statute amending a section of a repealed statute is void." (See *Fletcher v. Prather* (1894) 102 Cal. 413, 418; 1A Sutherland, Statutes and Statutory Construction (7th ed. 2009) Amendatory Acts, § 22:3, p. 253 (hereafter, Sutherland) [since an amendment alters, modifies, or adds to a prior statute, a repealed statute cannot be amended—that which does not exist cannot be amended].)

The Counties maintain that Assembly Bills 2877 and 430 constitute new enactments of section 14053.1 (following brief repeal periods), in line with legislative intent to keep the section 14053.1 substantive provision on the statutory books. We agree with the Counties.

Viewing Assembly Bills 2877 and 430 as new enactments of Welfare and Institutions Code section 14053.1, rather than as amendments to the repealed section 14053.1, furthers the Legislature's intent to extend section 14053.1's duration, tracks the plain statutory language detailed previously, and does not violate the principle of Government Code section 9609.

In Assembly Bills 2877 and 430, the Legislature acted twice with respect to sunset dates for section 14053.1: First, to extend the sunset date; and then to delete it altogether. These are not the actions of a legislative body that intended to get rid of section 14053.1, but rather to maintain it.

Tracking the plain statutory language, Assembly Bill 2877 enacted section 14053.1 effective July 7, 2000, after section 14053.1 had been repealed by its terms from

July 1, 2000 (§ 14053.1's original sunset date) through July 6, 2000. Similarly, Assembly Bill 430 enacted section 14053.1 effective August 10, 2001, without a sunset date, after section 14053.1 had been repealed by its terms from July 1, 2001 (the Assembly Bill 2877 sunset date) through August 9, 2001. Throughout this entire statutory history, the section 14053.1 substantive provision has read the same. Consequently, section 14053.1's substantive provision has been the law since its original enactment on July 22, 1999 (and the State treated it as such until 2009, after § 14053.3 was enacted in 2008), and remains the law today (we will later discuss § 14053.3), except for two brief periods when that substantive provision was repealed by section 14053.1's own terms: July 1, 2000 through July 6, 2000; and July 1, 2001 through August 9, 2001. Furthermore, all parties agree that, under section 14053.1's substantive provision, the State pays for ancillary outpatient services for Medi-Cal eligible IMD patients within the federal IMD exclusion.

The language the Legislature used in Assembly Bills 2877 and 430 setting forth the provisions of section 14053.1 arguably acknowledged the context in which these two bills were enacted—budget trailer bill legislation enacted as urgency legislation given the prolonged budget battles typical of the day. So, if Assembly Bills 2877 and 430 were chaptered *before* the sunset dates relevant to them (respectively, July 1, 2000, and July 1, 2001), they would operate seamlessly as amendments of those sunset dates; if Assembly Bills 2877 and 430 were chaptered *after* those relevant sunset dates, they would operate as new enactments of section 14053.1, after section 14053.1 had been repealed for brief periods by those sunset provisions. Indeed, with respect to Assembly Bill 430, the *Legislature itself* did not adopt that bill *until a month after* the relevant sunset date of July 1, 2001; and it took another 10 days for the bill to be chaptered. Given this legislative delay, Assembly Bill 430 did not *amend* section 14053.1 in any practical sense.

10

Further supporting the view that Assembly Bills 2877 and 430 constitute new enactments of section 14053.1 is the bedrock principle that all intendments favor the exercise of the Legislature's plenary authority to legislate; if there is any doubt as to the Legislature's power to act in any given case, the doubt should be resolved in favor of the Legislature's action. (*Methodist Hosp. of Sacramento v. Saylor* (1971) 5 Cal.3d 685, 691; see *In re Collie* (1952) 38 Cal.2d 396, 398 [one Legislature cannot diminish the legislative power of a subsequent Legislature].) Interpreting Assembly Bills 2877 and 430 solely as amendments of a repealed statute forecloses the Legislature's power to legislate; but interpreting the two bills as new enactments, when legitimate to do so (as here), accords with the Legislature's plenary power to legislate (and, we add, does so here while furthering legislative intent).

The State counters this view of Assembly Bills 2877 and 430 with three principal arguments. We are not persuaded.

First, the State notes that the language in the annual legislative bill books (i.e., the Statutes and Amendments to the Codes) and in the annotated codes (e.g., Welf. & Inst. Code, § 14053.1; Historical and Statutory Notes, 75 West's Ann. Welf. & Inst. Code (2010 ed.) foll. § 14053.1, p. 79) characterized the legislative action taken with respect to Assembly Bills 2877 and 430 as "amend[ments]" to section 14053.1; and the State again points to Government Code section 9609, which proscribes amending a repealed act.

As we have just seen, however, had Assembly Bills 2877 and 430 been chaptered before their relevant sunset dates, they would have constituted amendments of those sunset dates; since the two bills were chaptered after those sunset dates, they constituted new enactments, given the plain language comprising Welfare and Institutions Code section 14053.1's legislation. Surely, the language the State relies upon, which merely characterized the Legislature's action in legislating, cannot trump the words the Legislature actually used in the statute itself. That would elevate form over substance.

11

And Government Code section 9609—which is within a statutory chapter entitled "Operation of Statutes and Resolutions"—is a legislative tool designed to serve the Legislature; but the State's argument reverses this relationship so that the Legislature is there to serve section 9609.**4**

Second, the State argues that Assembly Bills 2877 and 430, as purported amendments, cannot constitute a repeal and reenactment of section 14053.1. The State contends essentially that statutory chaos would ensue if the Legislature could restore the legal existence of a statute, which had been repealed, simply by reenacting it as part of an amendment. This is especially so, the State argues, given that California constitutionally mandates that "[a] section of a statute may not be amended unless the [whole statute] is re-enacted as amended." (Cal. Const., art. IV, § 9 [this constitutional requirement ensures that legislators and the public are apprised of changes in the law that otherwise could be difficult to discern if amendments to statutes were codified solely in piecemeal fashion].) The State concludes, "There is no indication that the subject amendments [(Assem. Bills 2877 & 430)] were intended by the Legislature to serve as new statutes repealing the existing statute of section 14053.1. Indeed, the subject amendments sought to amend (re-set) only the repeal clause of section 14053.1, and not repeal section 14053.1, with its substantive funding provisions."

The deficiency in this argument is the State's view that Assembly Bills 2877 and 430 could constitute *amendments only*. As our analysis makes clear, depending upon when Assembly Bills 2877 and 430 were chaptered, they could constitute *either* amendments *or* new enactments of section 14053.1. Given their chaptering dates,

---

**4** We also note that the annotated code states that Assembly Bill 430 "might be given effect as a new addition of . . . [Welfare and Institutions Code] section [14053.1]; but see Government Code [section] 9609." (Historical and Statutory Notes, 75 West's Ann. Welf. & Inst. Code (2010 ed.) foll. § 14053.1, p. 79.)

12

Assembly Bills 2877 and 430 constituted new enactments of section 14053.1; this conclusion accords with the plain language the Legislature used, and furthers the Legislature's intent to extend and then eliminate the sunset provision of section 14053.1, keeping the substantive provision of section 14053.1 intact (after brief periods of repeal). Even the State effectively concedes in this argument that Assembly Bills 2877 and 430 sought only to amend section 14053.1's repeal (sunset) clause, and not repeal its substantive provision.

Third, and finally, the State asserts that Government Code section 9607 forecloses the revival of Welfare and Institutions Code section 14053.1. As pertinent, section 9607 states, "If a later enacted statute that deletes or extends the date of termination or repeal of a previously enacted law is chaptered before such date of termination or repeal, the terminated or repealed law is revived when the later enacted statute becomes operative." (Gov. Code, § 9607, subd. (b).)

The problem with this argument is that neither Assembly Bill 2877 nor Assembly Bill 430 "revived" section 14053.1. As the State acknowledges in its briefing, " 'A reviving act is one which *restores* legal existence and force to a statute that has been expressly or impliedly repealed.' " (Quoting Sutherland, *supra*, § 22:26, p. 334, italics added.) In other words, a "revival" brings a lapsed statute back into existence to govern conduct occurring before the lapse. (*Ibid.*) As explained previously, Assembly Bills 2877 and 430—each of which was chaptered after a brief repeal of section 14053.1— each constitute a new enactment of section 14053.1 following the repeal of the old section 14053.1 by its own terms; Assembly Bills 2877 and 430 were not "reviving acts" of section 14053.1.

## II. The Relationship Between Section 14053.3 and Section 14053.1

Section 14053.3, first enacted in 2008, provides, as pertinent here, "[F]ederal financial participation reimbursement is [generally] not allowed for ancillary services

13

provided to persons residing in . . . institutions for mental disease (IMD) [(i.e., the federal IMD exclusion)], and since . . . counties are financially responsible for specialty mental health services and related ancillary services provided to persons through county mental health programs when Medi-Cal reimbursement [(i.e., state funding)] is not available, when it is determined that Medi-Cal reimbursement has been paid for ancillary services for residents of IMD's, both the federal financial participation reimbursement and any state funds paid for the ancillary services provided to residents of IMD's shall be recovered from counties by the [DHCS] in accordance with applicable state and federal statutes and regulations." (§ 14053.3, subd. (a).)

The State contends that section 14053.3's language shifted funding from the State to the counties for ancillary services for Medi-Cal eligible IMD patients within the federal IMD exclusion, or impliedly repealed section 14053.1, in line with a general legislative trend to shift more of the funding for the Medi-Cal program from the State to the counties.

The Counties contend that sections 14053.1 and 14053.3 can be read harmoniously. According to the Counties, section 14053.3 was enacted to encourage more effective state oversight of the IMD claims process, and has the modest effect of authorizing the State to recover state or federal funds paid to counties for IMD ancillary services that are not covered by Medi-Cal or by Medicaid—for example, state-paid ancillary services provided to IMD patients, like undocumented immigrants, who are not eligible for Medi-Cal; or federally paid ancillary services provided to IMD patients within the federal exclusion. Once again, we agree with the Counties' interpretation.

Given these contentions on appeal, we need only determine section 14053.3's relationship to section 14053.1. We need not interpret section 14053.3 for any other purpose.

14

In arguing that section 14053.3 shifted funding from the State to the counties for ancillary services for Medi-Cal eligible IMD patients within the federal IMD exclusion, the State asserts that the "plain language of section 14053.3 shows [this] change." The State relies on the section 14053.3 phrase, "when Medi-Cal reimbursement is not available." (§ 14053.3, subd. (a).) The State argues that this phrase, in light of section 14053.1's repeal on July 1, 2000, under its original sunset provision, means that "Medi-Cal reimbursement" (i.e., state funding) for ancillary services for Medi-Cal eligible IMD patients within the federal IMD exclusion is no longer available, which in turn means the counties now pay for these services. Frankly, if the Legislature had intended to make this significant funding shift from the State to the counties, the Legislature could have said so, plainly. The Legislature did not. Furthermore, this argument is circular and begs the question to be decided (§ 14053.3's relationship to § 14053.1), rather than helps decide it. And the legislative analysis of a related statutory amendment referred to section 14053.1, *in 2013*, as "[e]xisting law." (Legis. Counsel's Dig., Assem. Bill No. 1054 (2013-2014 Reg. Sess.) 4 Stats. 2013, Summary Dig., p. 141; see Stats. 2013, ch. 303, § 1 [amending § 5912 to lower the annual increase percentage in the reimbursement rate counties pay to IMD's for core services, eff. July 1, 2014]; see also Sen. Rules Com., Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 1054 (2013-2014 Reg. Sess.) June 5, 2013, p. 1, par. 4.)

As for the State's alternative argument that section 14053.3 impliedly repealed section 14053.1, all presumptions are against one statute repealing another by implication. (*Garcia v. McCutchen* (1997) 16 Cal.4th 469, 476.) A court will find an implied repeal only when there is no rational basis for harmonizing two potentially conflicting statutes, and the statutes are irreconcilable, clearly repugnant, and so inconsistent they cannot operate concurrently. (*Id.* at p. 477.)

There is no basis to conclude that section 14053.3 impliedly repealed section 14053.1; the two statutes operate harmoniously under the Counties' interpretation of them. Section 14053.1 provides that Medi-Cal funding (i.e., state funding) pays for "ancillary outpatient services" for IMD patients within the federal IMD exclusion who are "eligible" for Medi-Cal. And section 14053.3 provides that counties are "financially responsible" for "specialty [(i.e., non-core)] mental health services and related ancillary services . . . when Medi-Cal reimbursement [(i.e., state funding)] is not available . . . ." Considered together, these two statutes mean, as the Counties assert, that the State pays for the ancillary services provided to IMD patients within the federal IMD exclusion when those patients *are Medi-Cal eligible*, and counties pay for specialty (i.e., non-core) mental health services and related ancillary services for IMD patients within the federal IMD exclusion when those patients *are not Medi-Cal eligible*. This interpretation tracks the state/county division of financial responsibility since section 14053.1's enactment in 1999: The State pays for ancillary outpatient services for Medi-Cal eligible IMD patients within the federal IMD exclusion, while counties pay for the core services (non-ancillary) for such patients; and counties pick up the tab for the core services as well as the specialty mental health services and related ancillary services for IMD patients who are not Medi-Cal eligible.

Moreover, the Counties' interpretation of section 14053.3 as a mechanism to more efficiently recover from counties improperly paid state Medi-Cal funds or federal Medicaid funds is further supported by (1) section 14053.3's 2008 legislative history, which explains the section authorizes the State to recover Medi-Cal funds paid to counties for ancillary services to IMD patients when the patient "is not eligible for Medi-Cal reimbursement or the services are not authorized" (Sen. Rules Com., Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 1183 (2007-2008 Reg. Sess.) as amended Sept. 15, 2008, par. 22; Assem. Budget Com., analysis of Assem. Bill No. 1183

16

(2007-2008 Reg. Sess.) Sept. 16, 2008, par. 35), and (2) the 2012 amendment of section 14053.3, which added a new reporting requirement, subdivision (b), to the section, reading, "Mental health plans shall report to the [DHCS] admission and discharge dates for Medi-Cal beneficiaries in [IMD's] on a quarterly basis in a format provided by the [DHCS]."  (Stats. 2012, ch. 34, § 225, p. 609.)

## DISPOSITION

The Counties' petition for writ of mandate and complaint for declaratory and injunctive relief is granted as follows:  The DHCS 2009 Memorandum and the DMH 2010 Letter contravene section 14053.1 (which requires the State to pay for ancillary outpatient services for Medi-Cal eligible IMD patients within the federal IMD exclusion), and are therefore invalid; the State is enjoined from applying them.  The judgment of the trial court is reversed.  The Counties are awarded their costs on appeal.[5]  (Cal. Rules of Court, rule 8.278(a)(1), (2).)  (***CERTIFIED FOR PUBLICATION***)


        BUTZ        , Acting P. J.

We concur:


    DUARTE    , J.


    HOCH    , J.

---

[5]  In light of our resolution, we do not reach the issue of whether the DHCS 2009 Memorandum and the DMH 2010 Letter are also invalid as underground regulations under the Administrative Procedures Act.

  We grant the Counties' request for judicial notice, showing the State's estimated cost for IMD ancillary services for fiscal years 2013-2014 and 2014-2015.  We deny the State's motion to augment or, in the alternative, request for judicial notice to consider an unpublished decision of the federal Health and Human Services Agency.

17