Filed 11/26/25  Tri-State Community Healthcare Center v. Baass CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| TRI-STATE COMMUNITY HEALTHCARE CENTER, <br><br> Plaintiff and Appellant, <br><br> v. <br><br><br> MICHELLE BAASS, as DIRECTOR OF DEPARTMENT OF HEALTH CARE SERVICES, etc., et al., <br><br> Defendants and Respondents. | C100577 <br><br> (Super. Ct. No. 34-2023-80004082-CU-WM-GDS) |

The question before us is whether Welfare and Institutions Code[1] section 14132, subdivision (aa)(5), exempts an administrative rule adopted by defendant and respondent Department of Health Care Services (DHCS) from the requirements of California's Administrative Procedure Act (APA) (Gov. Code, § 11340 et seq.).

---

[1]     Undesignated section references are to the Welfare and Institutions Code.

1

Section 14132, enacted in 1999, provided DHCS with an exemption from the APA to implement the Family Planning Access Care and Treatment (Family PACT) program, and mandates compliance with the APA "thereafter." In 2016, in apparent reliance on this APA exemption, DHCS enacted a new enrollment requirement for health clinics in the Family PACT program. DHCS subsequently enforced this new enrollment requirement against plaintiff and appellant Tri-State Community Healthcare Center (Tri-State) as part of a Medi-Cal audit. Tri-State filed an administrative appeal of the audit, challenging the new rule as an improper "underground regulation," but its appeal was denied. Tri-State then filed a petition for administrative writ of mandate, which was also denied.

On appeal, Tri-State again challenges the enrollment requirement on the ground that it was not adopted in compliance with the APA. In response, DHCS argues that the enrollment requirement falls within the scope of the APA exemption granted under section 14132, subdivision (aa)(5). We agree with DHCS's construction and therefore affirm the judgment.

BACKGROUND FACTS AND PROCEDURE

Tri-State is a nonprofit, public benefit corporation that operates as a federally qualified health center (FQHC). FQHCs are clinics that receive federal grants to provide primary health care services to medically underserved populations. (42 U.S.C. § 254b(a)(1).) FQHCs are entitled to compensation under state Medicaid programs, which compensate them at a fixed per-visit rate calculated to cover the allowable costs related to providing covered services. (42 U.S.C. § 1396a(bb).)

Medicaid is a program under which the federal government and participating state governments share the costs of medical treatment for eligible low-income individuals. (*County of Colusa v. Douglas* (2014) 227 Cal.App.4th 1123, 1126.) California's Medicaid program is known as Medi-Cal. (*Ibid*.) DHCS is the state agency designated to administer the Medi-Cal program. (§§ 10740, 14000 et seq.)

To obtain reimbursement for Medi-Cal services, providers generally must be enrolled in the Medi-Cal program for each location at which covered services are provided. (*Marvin Lieblein, Inc. et al. v. Shewry* (2006) 137 Cal.App.4th 700, 707; §§ 14043, 14043.1, subd. (o), 14043.15, 14043.26.) However, an exception to Medi-Cal enrollment exists for intermittent sites and affiliated mobile health care units that are operated by a licensed (parent) primary care clinic (hereafter referred to collectively as "intermittent clinics"). (§ 14043.15, subd. (e); see Health & Saf. Code, §§ 1206, subd. (h), 1218.1, 1218.4, 1765.101 et seq.)

Family PACT is a program to provide "comprehensive clinical family planning services" to persons of reproductive age who may not otherwise be eligible for Medi-Cal services. (§ 14132, subd. (aa)(1).) Family PACT was first established as a state-funded program in 1996. (Assembly Bill No. 3483 (1996-1997 Reg. Sess.), Stats. 1996, ch. 197, § 52; § 24000 et seq.) In 1999, California received federal approval to establish Family PACT as a Medi-Cal subprogram under a temporary Medicaid waiver. (Assembly Bill No. 1107 (1999-2000 Reg. Sess.) (Assem. Bill No. 1107), Stats. 1999, ch. 146, § 64.) Later, in 2010, Family PACT was approved as a permanent part of California's Medi-Cal state plan. The Family PACT program is administered by DHCS's Office of Family Planning. (§ 24005.)

Enrollment in Medi-Cal does not automatically enable providers to bill for Family PACT services. To be paid for such services, Medi-Cal providers must be separately enrolled in the Family PACT program. (§ 24005, subs. (c) & (d).) Before 2016, the requirements to enroll in Family PACT were consistent with Medi-Cal enrollment requirements—that is, only licensed primary care clinics had to enroll in Family PACT; intermittent clinics did not have to enroll separately from their licensed parent clinics.

In 2016, however, DHCS's Office of Family Planning adopted a new policy requiring all service locations to be individually enrolled in the Family PACT program to receive reimbursement for providing Family PACT services, with no exception for

3

intermittent or mobile locations. DHCS proposed the policy in late 2015 and, after a short public comment period, incorporated the policy into its "Family PACT Policies, Procedures and Billing Instructions Manual" (the Manual) in January 2016. On or about February 15, 2016, DHCS issued a Family PACT Update, advising providers of the new enrollment requirement for intermittent clinics.

In 2019, DHCS audited Tri-State's financial records relating to Family PACT services provided between July 1, 2016, through December 31, 2018. During the audit period, Tri-State operated four clinics in California, including one licensed primary care clinic and three intermittent clinics. The licensed primary care clinic served as the " 'parent' " to the intermittent clinics for purposes of Medi-Cal enrollment. The parent clinic was separately enrolled in the Family PACT program, but the intermittent clinics were not. Thus, during the audit period, any Family PACT services furnished by the intermittent clinics were provided under the parent clinic's Family PACT enrollment.

DHCS's audit revealed that nearly all (about 99 percent) of Tri-State's Family PACT claims during the audit period related to patient visits at its intermittent clinics. Because the intermittent clinics were not separately enrolled in the Family PACT program, DHCS determined that the services rendered at these locations should not have been claimed and, as a result, Tri-State was overpaid. DHCS issued a final demand for reimbursement of $752,987.94.

Tri-State appealed the audit findings, arguing that the intermittent clinic enrollment requirement was an invalid underground regulation adopted in violation of the APA. In response, DHCS argued that the APA exemption in section 14132, subdivision (aa)(5), gave it the authority to implement the Family PACT program.

A hearing was held before an administrative law judge (ALJ), who issued a proposed decision denying the appeal. The Chief ALJ rejected the proposed decision and invited supplemental briefing.

4

In August 2022, the Chief ALJ issued a final decision denying the appeal and upholding DHCS's audit findings on the ground that section 14132, subdivision (aa)(5), exempted the 2016 changes to the Family PACT Manual from compliance with the APA. Giving deference to DHCS's interpretation of the statute, the Chief ALJ reasoned that the intermittent clinic enrollment requirement is not an underground regulation because it was exempted from the APA's rulemaking requirements under section 14132, subdivision (aa)(5).

Tri-State challenged the administrative decision by filing a petition for writ of administrative and traditional mandate and complaint for declaratory and injunctive relief. After a hearing, the trial court granted the petition in part. The court held that DHCS had violated its mandatory duty under section 14132, subdivision (aa)(5), by failing to take any action to promulgate regulations in the more than 22 years since the statute was enacted. Thus, the court issued a traditional writ of mandate under Code of Civil Procedure section 1085 ordering DHCS to initiate the process of promulgating Family PACT regulations.

Nevertheless, the trial court held that DHCS's delay in adopting formal regulations did not invalidate the existing program requirements set forth in the Family PACT Manual. The court reasoned that the 2016 enrollment requirement was not an invalid underground regulation because section 14132, subdivision (aa)(5), expressly authorized DHCS to impose interim program requirements through amendments to the Manual until such time as formal regulations are adopted. Thus, the court denied the petition for a writ of administrative mandate to set aside the audit findings. The court also denied as moot Tri-State's complaint for declaratory and injunctive relief.

Tri-State appeals from the portion of the judgment denying the writ of administrative mandate.

5

DISCUSSION

Tri-State argues that DHCS is prohibited from relying on the intermittent clinic enrollment requirement to invalidate its claims for Family PACT services because it amounts to an underground regulation adopted in violation of the APA. DHCS counters that it did not have to comply with the APA's rulemaking procedures because section 14132, subdivision (aa)(5), exempts rules implementing the Family PACT program until regulations are adopted. We agree with DHCS.

A.     *APA Rulemaking Procedures*

Under the APA, no state agency shall "issue, utilize, enforce, or attempt to enforce any . . . regulation" unless it has been adopted in compliance with the APA. (Gov. Code, § 11340.5, subd. (a).) For purposes of the APA, the term "[r]egulation" is broadly defined to include any "rule, regulation, order, or standard of general application or the amendment, supplement, or revision of any rule, regulation, order, or standard adopted by any state agency to implement, interpret, or make specific the law enforced or administered by it, or to govern its procedure." (Gov. Code, § 11342.600.)

The APA prescribes basic procedural requirements that state agencies must follow when adopting regulations, including public notice and offering an opportunity for comment. (*Morning Star Co. v. State Bd. of Equalization* (2006) 38 Cal.4th 324, 333.) Any regulation that substantially fails to comply with the APA requirements is an "underground 'regulation' " and may be judicially declared invalid. (*Ibid.*; *California Healthcare & Rehabilitation Center et al. v. Baass* (2025) 109 Cal.App.5th 553, 560; Gov. Code, § 11350; see also Cal. Code Regs., tit. 1, § 250.)

Here, there is no dispute that the intermittent clinic enrollment requirement constitutes a "regulation" within the meaning of the APA. (Gov. Code, § 11342.600; *Center for Biological Diversity v. Department of Fish & Wildlife* (2015) 234 Cal.App.4th 214, 259-260.) It is also undisputed that the challenged enrollment policy was not promulgated in accordance with the APA. The only question before us is whether the

6

enrollment requirement was exempted from the rulemaking provisions of the APA by section 14132, subdivision (aa)(5).  (See *Savient Pharmaceuticals, Inc. v. Department of Health Services et al.* (2007) 146 Cal.App.4th 1457, 1469; Gov. Code, § 11346 [APA requirements may be superseded or modified by statute].)

      B.      *Section 14132, subdivision (aa)(5), and the Family PACT Manual*

Section 14132, subdivision (aa), was enacted in 1999 as part of Family PACT's transition from a state-only funded program to a partially federally-funded Medicaid "waiver" program.  (Legis. Counsel's Dig., Assem. Bill No. 1107 (1999-2000 Reg. Sess.) 5 Stats. 1999, Summary Dig., p. 72; § 14132, subd. (aa).)  Subdivision (aa)(5) of that section provides:  "Notwithstanding [the rulemaking provisions of the APA], [DHCS] may implement, without taking regulatory action, the provisions of the waiver after its approval by the federal Centers for Medicare and Medicaid Services and the provisions of this section by means of an all-county letter or similar instruction to providers.  Thereafter, [DHCS] shall adopt regulations to implement this section and the approved waiver in accordance with the requirements of [the APA].  Beginning six months after the effective date of the act adding this subdivision, [DHCS] shall provide a status report to the Legislature on a semiannual basis until regulations have been adopted." (§ 14132, subd. (aa)(5).)[2]

Shortly after the enactment of section 14132, subdivision (aa)(5), DHCS took steps to implement Family PACT's transition to Medi-Cal by issuing the Family PACT Manual.  The Manual was not promulgated in compliance with the APA.  Instead, DHCS relied on the statutory exemption authorizing it to implement the program, without

---

[2]     Section 14132, subdivision (aa)(5), was amended in 2016 to substitute "Centers for Medicare and Medicaid Services" for "Health Care Financing Administration." (Assembly Bill No. 2394 (2015-2016 Reg. Sess.), Stats. 2016, ch. 615, § 1, eff. July 1, 2017.)  It is otherwise unchanged since its enactment.  We grant Tri-State's request to take judicial notice of Assembly Bill No. 2394.  (Evid. Code, §§ 452, subd. (c), 459, subd. (a).)

adopting regulations, by means of "an all-county letter or similar instruction to providers."  (§ 14132, subd. (aa)(5).)

From the inception of the Manual in 1999 until 2016, there was no requirement that intermittent clinics separately enroll in the Family PACT program.  However, in late 2015, DHCS announced a new policy requiring intermittent clinics to separately enroll in the Family PACT program.  Shortly thereafter, in January 2016, DHCS added the intermittent clinic enrollment requirement to its Manual.

Since the enactment of section 14132, subdivision (aa), in 1999, DHCS has not promulgated any APA regulations to implement the Family PACT program.  Changes in program requirements instead have been implemented by means of the Manual.

C.      *Standard of Review*

" 'When reviewing the denial of a petition for writ of administrative mandate under Code of Civil Procedure section 1094.5, we ask whether the public agency committed a prejudicial abuse of discretion.  "Abuse of discretion is established if the [public agency] has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence." ' " (*Family Health Centers of San Diego v. State Dept. of Health Care Services* (2021) 71 Cal.App.5th 88, 96-97.)

In determining whether the administrative findings are supported by the evidence, the scope of our review is the same as that of the trial court.  (*Family Health Centers of San Diego v. State Dept. of Health Care Services, supra*, 71 Cal.App.5th at pp. 96-97.) We review the entire administrative record to determine whether the agency's findings are supported by substantial evidence.  (*Id*. at p. 97.)  We do not reweigh the evidence. (*Ibid*.)  We indulge all presumptions and resolve all conflicts in favor of the agency's decision.  (*Ibid*.)  We may reverse only if no reasonable person could have come to the same conclusion as the agency based on the evidence before it.  (*McAllister v. California Coastal Com.* (2008) 169 Cal.App.4th 912, 921.)  Tri-State, as the party challenging the

8

administrative decision, bears the burden of establishing a prejudicial abuse of discretion. (*Family Health Centers of San Diego,* at p. 97.)

The proper interpretation of section 14132, subdivision (aa), presents a question of law, which is subject to our independent judgment. (*McDermott Ranch, LLC v. Connolly Ranch, Inc.* (2019) 43 Cal.App.5th 549, 559.) In construing the statute, our fundamental task is to ascertain the intent of the lawmakers so as to effectuate the purpose of the law. (*Ibid*.) We begin with the words of the statute, because they generally provide " 'the most reliable indicator of legislative intent.' " (*Ibid*.) " 'Significance should be given, if possible, to every word of an act. [Citation.] Conversely, a construction that renders a word surplusage should be avoided.' " (*Mamika v. Barca* (1998) 68 Cal.App.4th 487, 491; accord, *Imperial Merchant Services, Inc. v. Hunt* (2009) 47 Cal.4th 381, 390.) If the statutory language is clear and unambiguous, "we generally presume the Legislature meant what it said, and the plain meaning controls." (*Fowler v. Golden Pacific Bancorp, Inc.* (2022) 80 Cal.App.5th 205, 218.)

D.     *Analysis*

Tri-State argues the intermittent clinic enrollment requirement is unenforceable as an underground regulation adopted in violation of the APA. Tri-State acknowledges that section 14132, subdivision (aa)(5), includes an exemption from the APA for the Family PACT program. It argues, however, that this statutory exemption was limited to the initial establishment of the Family PACT Medi-Cal program and cannot be stretched to cover a change in enrollment policy adopted 16 years later.

DHCS argues that because the statute does not impose any specific time parameter for completing the regulatory process, the statute should be construed as permitting DHCS to implement the Family PACT program through updates to the Manual until such time as regulations are eventually adopted. Although the trial court held that DHCS's delay in adopting regulations was unreasonably long, DHCS argues that the delay should not invalidate the interim requirements imposed via the Manual. DHCS also argues that

9

we should accord "significant weight" to its interpretation of the statute because (1) it is the agency charged with enforcing the statute; (2) the Legislature has "implicitly acquiesced" in its interpretation; and (3) any other interpretation would be unnecessarily disruptive to the operations of the Family PACT program.

As a preliminary matter, we reject DHCS's argument that we must give great weight to its interpretation of the statute. While the agency's interpretation of the statute is entitled to consideration and respect, it is not binding. (*Associated General Contractors of California, Inc. et al. v. Department of Industrial Relations et al*. (2025) 108 Cal.App.5th 243, 266.) "The court, not the agency, has final responsibility for interpreting the law." (*Ibid*., fn. omitted.) The agency's interpretation is one among several tools available to the court. (*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 7.) Depending on the context, it may be helpful, enlightening, or even convincing. Other times, it may be of little assistance. (*Id*. at pp. 7-8; see *In re H.C.* (2017) 17 Cal.App.5th 1261, 1268-1270 [agency's "[a]ll-[c]ounty [l]etter" is helpful, but not binding].)

Nevertheless, exercising our independent judgment, we conclude that DHCS's interpretation of the statute is correct. To explain our reasoning, we begin with the language of the statute, which provides: "Notwithstanding [the rulemaking procedures of the APA], [DHCS] may implement, . . . the provisions of the waiver . . . and the provisions of this section by means of an all-county letter or similar instruction to providers. Thereafter, [DHCS] shall adopt regulations to implement this section and the approved waiver in accordance with the requirements of [the APA]." (§ 14132, subd. (aa)(5).)

Tri-State interprets this language to mean that DHCS was granted only a limited, one-time exemption from the APA to implement the initial transition of Family PACT to the Medi-Cal program. Tri-State argues that its interpretation is supported by the statute's use of the singular phrase "an all-county *letter* or similar *instruction*" (italics added),

10

rather than the plural "all-county letters or similar instructions."  Tri-State further argues that use of the words "thereafter" and "shall" in the next sentence confirms that DHCS was granted only a limited, one-time exemption to implement the provisions of the waiver, and that compliance with the APA would be required from that point forward.

Tri-State's argument has surface appeal.  But, as DHCS points out, the statute's use of the singular form must be viewed in light of the general interpretive principle that, when construing words and phrases in the Welfare and Institutions Code, "[t]he singular number includes the plural, and the plural number includes the singular." (§ 13.)  This rule of construction governs unless the context otherwise requires.  (§ 5.)  Here, nothing in the context of the statute or the overall statutory scheme suggests we should read the singular to exclude the plural.  (See *Minish v. Hanuman Fellowship* (2013) 214 Cal.App.4th 437, 464; *Moustafa v. Board of Registered Nursing* (2018) 29 Cal.App.5th 1119, 1131-1132.)  To the contrary, other provisions of the Welfare and Institutions Code support the conclusion that the Legislature generally does not differentiate between the singular and plural when enacting APA exemptions.  (Compare §§ 14005.41, subd. (j), 14011.7, subd. (h), and 14011.10, subd. (l), with §§ 14000.8, subd. (b), 14007.71, subd. (d), 14013.5, subd. (i), and 14149.3, subd. (i); compare also § 14132, subd. (aa)(5), with subs. (ab)(4), (ad)(8), (ae)(2), (af)(5), and (ag)(2); see § 14105.181, subd. (d)(2), ["by means of a provider bulletin, or other similar instructions"]; see also *Ferra v. Loews Hollywood Hotel, LLC* (2021) 11 Cal.5th 858, 866 [where statutes use synonymous words or phrases interchangeably, those words or phrases should be understood to have the same meaning].)

Section 14132.58 is particularly instructive.  It directs DHCS to take steps to exercise the health services initiative option made available under the Children's Health Insurance Program.  (§ 14132.58.)  Subdivision (e) of that statute provides: "Notwithstanding [the APA], [DHCS] shall implement this section by means of *an all-county letter or similar instruction*, without taking any further regulatory action, *until*

11

*regulations are adopted*." (*Id.*, subd. (e), italics added; accord, Senate Bill No. 1003 (1999-2000 Reg. Sess.), Stats. 1999, ch. 670, § 14; Senate Bill No. 1569 (2005-2006 Reg. Sess.), Stats. 2006, ch. 672, § 4.) The Legislature clearly intended this language to exempt DHCS from complying with the rulemaking requirements of the APA "until regulations are adopted," notwithstanding the use of the singular form "an all-county letter or similar instruction." We believe the same is true here. The language of section 14132, subdivision (aa)(5), read in the context of section 13, necessarily implies that DHCS has authority to implement the provisions of that section by means of all-county letters or similar instructions—plural—*until regulations have been adopted*.

Contrary to what Tri-State argues, this does not render the sentence beginning with the word "[t]hereafter" surplusage. Instead, it means that DHCS has authority to implement section 14132, subdivision (aa)(5), by means of all-county letters or similar instructions until the regulatory process is complete, and, "[t]hereafter," any additional changes to the program must be implemented using the formal APA rulemaking procedures.[3] This is a common framework that the Legislature has employed throughout the Welfare and Institutions Code. (See, e.g., § 14005.31, subd. (d), ["Notwithstanding [the APA], [DHCS], without taking any further regulatory action, shall implement, interpret, or make specific this section by means of all-county letters, plan letters, plan or provider bulletins, or similar instructions until the time regulations are adopted. Thereafter, [DHCS] shall adopt regulations in accordance with the [APA]"]; accord, §§ 14005.32, subd. (c), 14005.60, subd. (d), 14015.5, subd. (e); see also Gov. Code,

---

[3] We recognize that in 2020, the Office of Legislative Counsel provided a contrary opinion in response to an assemblymember's inquiry. However, because the opinion was prepared many years after section 14132, subdivision (aa)(5), was enacted, and there is no evidence that the opinion was ever considered by the Legislature as a whole, it is entitled to no more weight than the views of the parties in this case. (*St. John's Well Child & Family Center v. Schwarzenegger* (2010) 50 Cal.4th 960, 982; see *Miller v. Collectors Universe, Inc.* (2008) 159 Cal.App.4th 988, 1003-1004.)

§ 26605.6, subd. (h).)  The Legislature's intent in using such language was to give DHCS temporary authority to implement program changes while the regulatory process is pending, and mandate compliance with the APA "thereafter."  (See § 14131.11, subd. (j).)

Bolstering our conclusion is the legislative requirement that DHCS provide semiannual status reports on its regulatory progress.  (§ 14132, subd. (aa)(5).)  This language demonstrates that the Legislature anticipated that completing the regulatory process could take some time.  It is therefore reasonable to construe the statute as giving DHCS authority to implement the program by means of all-county letters or similar instructions until the regulatory process is complete.

Our interpretation does not mean that DHCS has unlimited time to complete the regulatory process, nor do we condone its lengthy delay in commencing that process. Rather, we agree with the trial court that because no deadline is specified in the statute, a reasonable time is implied.  (See *Sacks v. City of Oakland* (2010) 190 Cal.App.4th 1070, 1090.)  We also agree with the trial court that failure to promulgate regulations within a "reasonable" time does not render DHCS's interim requirements invalid or deprive DHCS of its authority to act "by means of an all-county letter or similar instruction." (See *Western/California, Ltd. v. Dry Creek Joint Elementary School Dist.* (1996) 50 Cal.App.4th 1461, 1497-1498; *Tran v. County of Los Angeles* (2022) 74 Cal.App.5th 154, 165-167.)  The proper remedy for DHCS's failure to adopt regulations in a reasonable time is the one imposed by the trial court—a traditional writ of mandate compelling DHCS to promulgate regulations.  (*California Correctional Peace Officers Assn. v. State Personnel Bd.* (1995) 10 Cal.4th 1133, 1148; see *AIDS Healthcare Foundation v. Los Angeles County Dept. of Public Health* (2011) 197 Cal.App.4th 693, 704.)

In sum, we conclude the intermittent clinic enrollment requirement is not an underground regulation because it was exempted from the APA's rulemaking

13

requirements by section 14132, subdivision (aa)(5).  Accordingly, the trial court did not err in denying the petition for an administrative writ of mandate.

DISPOSITION

The judgment is affirmed.  DHCS shall recover its costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1) & (2).

 

 

\s\
_____
Krause, J.

 

We concur:

 

\s\
_____
Robie, Acting P. J.

 

\s\
_____
Mauro, J.